PETITION OF THE DEPARTMENT OF SOCIAL SERVICES TO DISPENSE WITH CONSENT TO ADOPTION. August 10, 1983. *Adoption*, Dispensing with parent's consent.

Clear and convincing evidence as required by *Santosky* v. *Kramer*, 455 U.S. 745, 769-770 (1982), amply supported the Probate Court judge's findings and his conclusions that the natural mother was unfit to assume responsibility for her son, that the child's best interests would be served by terminating the mother's parental rights, and that a plan of adoption proposed by the Department of Social Services be implemented. See G. L. c. 210, § 3. See *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 588-590 (1981); *Custody of a Minor (No. 3)*, 14 Mass. App. Ct. 1013, 1013-1014 (1982). We summarize those findings. The mother exhibits many criteria of personality disorder, including inability to maintain relationships, failure to honor obligations, disregard for the truth, and failure to plan ahead. Although prone to seizures, she failed to seek medical attention to control her condition, which, if uncontrolled, is dangerous to the child. She consistently made poor judgments and lacked understanding about everyday matters. The child's biological father was a violent, aggressive individual who often struck the mother. The home the two had shared was a disorganized, violent place.

The child had been a premature baby and weighed only three and one-half pounds at birth. He fed with an "open suck" and required special care to prevent regurgitation. The mother was unable to follow simple instructions on feeding provided by the battery of social workers, visiting nurses, and physicians working with her and was unable to report accurately what the child had eaten. The child did not gain weight and was admitted to the University of Massachusetts Hospital with a diagnosis of "failure to thrive." With proper feeding, the child experienced a thirteen percent weight gain during the three days he was in the hospital. Upon discharge he was placed by the Department in a foster home where his growth continued. He remained in this foster home for approximately one year, and was then placed with the "B" family, who wish to adopt him. At the time the petition was heard, the child had been with the "B" family for over eighteen months and believed Mr. and Mrs. B were his parents.

In contrast, the mother visited the child fewer than a dozen times while he was in foster care. She cancelled some appointments and skipped others. She changed addresses frequently and did not respond to efforts to reach her by social workers. She refused her social worker's offers of transportation to enable her to visit with her son. Those visits that did take place were not uneventful: The child would frequently become hysterical and would refuse to go to the mother. The mother demonstrated neither emotional nor intellectual resources to deal with the child.

The child has special educational needs requiring therapy and speech exercises carried out constantly and consistently in the home. Even though the mother improved her living arrangements and appeared more stable (she was, at the time of the proceedings, living with a man of apparently even and supportive temperament), the child's needs require a degree of comprehension and consistency which she is unable to provide. The child had formed strong bonds to his caretakers and would suffer irreparable harm if returned to his mother, who lacks the capacity to give corresponding physical and emotional support to the child. These findings amply support the judge's conclusion of parental unfitness. What is involved here is a determination of unfitness in the sense of profound incapacity to care for the child. Compare *Custody of a Minor*, 389 Mass. 755, 767-769 (1983). No reliance on the presumption articulated in G. L. c. 210, § 3(c), was shown. See *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 389 Mass. 793, 802-803 (1983).

During the trial, the Commonwealth called as a witness Dr. Perihan Rosenthal, a psychiatrist, who had evaluated the mother at the request of her attorney. There was no error in admitting her testimony or her records pursuant to G. L. c. 233, § 20B(e).

*Judgment affirmed.*

*Mark S. Maynard* for the mother.

*Jamie W. Katz*, Assistant Attorney General, for the Department of Social Services.